# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ESTATE OF SAULO DEL ROSARIO, Deceased, by its Administrators Ad Prosequendum, CARMEN GONZALEZ (a/k/a CARMEN DOLORES PAYERO GONZALEZ) and YUNIOR J. REYES GONZALEZ (a/k/a YUNIOR J. REYES); CARMEN GONZALEZ, Individually; YUNIOR J. REYES GONZALEZ, Individually; STEVEN JAVIER DEL ROSARIO, a minor by his Guardians, CARMEN GONZALES AND YUNIOR J. REYES GONZALES; ELVIO DEL ROSARIO; DIOMEDES DEL ROSARIO, Individually; DIOSMENDY DEL ROSARIO, YANIRIS DEL ROSARIO, by their Guardian, DIOMEDES DEL ROSARIO; LEIDY DEL ROSARIO; HONEY DEL ROSARIO; MARTHA DEL ROSARIO; CARMELINA DEL ROSARIO, EMELY DEL ROSARIO, MISAEL DEL ROSARIO, and MIGUEL DEL ROSARIO by their Guardian, MARTA DEL ROSARIO,**<br><br>    Plaintiffs,<br><br>          v.<br>**PATERSON POLICE DEPARTMENT, CITY OF PATERSON, PATERSON POLICE OFFICER MARJ KUSH, PATERSON POLICE OFFICER ANGEL SANDOVAL, PATERSON POLICE OFFICER ANTHONY PETRAZZUOLO, PATERSON POLICE SERGEANT TROY BAILEY, PATERSON POLICE OFFICER ROBERT CHALLICE, PATERSON POLICE OFFICER GIUSEPPE CIARLA, SUPERVISORY OFFICALS I-X (names presently unknown), OFFICERS I-X (names presently unknown), ENTITIES I-X (names presently unknown),**<br><br>    **Defendants.** | Civ. No. 14-5167<br>(WJM)<br><br>**OPINION** |

1

Saulo Del Rosario ("Saulo" or "decedent") was fatally shot inside his bedroom by a Paterson police officer on September 1, 2012. Family members brought this action, individually and as beneficiaries of Saulo's estate, against the City of Paterson, the Paterson Police Department and certain Paterson police officers. This matter comes before the Court pursuant to Federal Rule of Civil Procedure 12(c) on Defendants' motion for judgment on the pleadings as to all but three named Plaintiffs. For the reasons below, the motion is **GRANTED in part** and **DENIED in part**.

I.   BACKGROUND

On September 1, 2012, Saulo Del Rosario, a thirty-nine-year-old man with a history of epileptic seizures and mental illness, locked his bedroom door and refused to allow family members to enter. Am. Compl. ¶ 22; Defs.' Br., Ex. C ¶ 4, E ¶ 8. Concerned for Saulo's safety, his sons asked an English-speaking friend to call 911 and request emergency medical assistance. Am. Compl. ¶ 25. The 911 operator dispatched Paterson Police and designated the call as an "EDP" (emotionally disturbed person). *Id.* ¶ 26.

Several police officers soon arrived at the Del Rosario home and attempted unsuccessfully to communicate with Saulo through the locked bedroom door. *Id.* ¶ 28. Police then removed from the house Saulo's three children, six nieces and nephews, and three siblings, and directed the family members to wait outside. *Id.* ¶¶ 30-31. A group of officers proceeded to break down the bedroom door. *Id.* ¶¶ 34-37. Seeing that Saulo was holding a hammer, Officer Marj Kush fired two shots, resulting in Saulo's death. *Id.* ¶¶ 37-38.

All family members present at the home on September 1, 2015 heard the fatal gun shots and watched as police officers carried Saulo's body out of the house.[1] Defs.' Br., Ex. H ¶ 11; Ex. I ¶ 9a. Plaintiffs Leidy and Styven Javier Del Rosario (Saulo's daughter and son) allege that they were standing directly outside Saulo's bedroom window and heard him exclaim "please let me live!" before the shots were fired. Defs.' Br., Ex. G ¶ 8, Ex. I ¶ 9a.

Plaintiffs filed their original complaint on August 19, 2014, alleging twelve state and federal tort claims. On April 16, 2015, the Court granted in part and denied in part Defendants' motion for summary judgment for failure

---

[1] Several Plaintiffs allege that officers dropped Saulo's body when removing it from the home. Defs.' Br., Ex. H. ¶ 12.

2

to state a claim. ECF No. 31.[2] Plaintiffs amended their complaint on June 16, 2015.[3]

Defendants now move for judgment on the pleadings under FRCP 12(c) as to all plaintiffs except Saulo's three children. First, Defendants argue that only Saulo's children satisfy the elements of negligent infliction of emotional distress, because the other Plaintiffs either do not qualify as immediate family members or did not directly witness the shooting. Second, Defendants argue that only Saulo's three children, as exclusive beneficiaries of his estate, are eligible to pursue derivative and survival tort claims. On these grounds, Defendants move to dismiss all Plaintiffs except for Saulo's three children.

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(c), judgment on the pleadings will be granted only if "the movant clearly establishes there are no material issues of fact, and he is entitled to judgment as a matter of law." *Sikirica v. Nationwide Insurance Co.*, 416 F.3d 214, 220 (3d Cir. 2005) (citing *Society Hill Civic Ass'n v. Harris*, 632 F.2d 1045, 1054 (3d Cir. 1980)). The court "must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Id.* In deciding a motion for judgment on the pleadings, the court considers the pleadings and attached exhibits, undisputedly authentic documents relied on by plaintiffs and attached to the motion, and matters of public record. *Atiyeh v. Nat'l Fire Ins. Co. of Hartford*, 742 F. Supp. 2d 591, 595 (E.D. Pa. 2010).

## III. DISCUSSION

Defendants argue that New Jersey tort law categorically bars a victim's nieces and nephews from establishing bystander liability in an action for negligent infliction of emotional distress ("NIED"). In fact, New Jersey law calls for a flexible, case-by-case examination of the bystander-victim relationship. In the present action, determining whether Saulo had formed sufficiently "intimate and familial" relationships with his nieces and nephews

---

[2] Plaintiffs Elvio Del Rosario and Martha Del Rosario were dismissed by voluntary stipulation on April 30, 2016. ECF No. 58. The April 16, 2015 opinion held, among other things, that Plaintiffs adequately allege the elements of negligent infliction of emotional distress.

[3] The amended complaint includes a claim under 42 U.S.C. § 1983, two counts of excessive use of force, conspiracy, negligence, wrongful death, survivorship, intentional infliction of emotional distress, negligent infliction of emotional distress, tortious conduct of employees, negligent hiring and training, and negligent supervision. ECF No. 35.

would require that the Court resolve outstanding issues of material fact. Defendants are therefore not entitled to judgment on the pleadings.

### A. <u>Negligent Infliction of Emotional Distress</u>

To state an NIED claim under New Jersey law, Plaintiffs must demonstrate "(1) the death or serious physical injury of another caused by defendant's negligence; (2) a marital or intimate, familial relationship between the plaintiff and the injured person; (3) observation of the death or injury at the scene of the accident; and (4) resulting severe emotional distress." *Portee v. Jafee*, 642 A.2d 372, 417 (N.J. 1980). This motion implicates *Portee's* second and third elements.

#### 1. Marital or Intimate, Familial Relationships

Defendants argue that NIED claims by Saulo's nieces and nephews fail as a matter of law because New Jersey strictly limits "intimate family relations" to spouses, cohabitating fiancés, parents and children. Defs. Br. 16. That position misconstrues New Jersey law. In *Dunphy v. Gregor*, the New Jersey Supreme Court rejected a bright-line approach that would exclude certain individuals solely on the basis of inadequate blood ties. 642 A.2d 372, 378 (N.J. 1994). Instead, courts must examine the particular "quality of interpersonal relationships" and "identify and define the intimacy and familial nature of such [] relationship[s]." *Id.*

The plaintiff in *Dunphy* argued that she qualified as a bystander after witnessing her fiancé die in a car accident, even though the plaintiff and victim were not yet married. *Dunphy*, 642 at 374. The New Jersey Supreme Court agreed:

> [T]o foreclose such a plaintiff from making a claim based upon emotional harm because her relationship with the injured person does not carry a particular label is to work a potential injustice, not only in this case but also in too many other instances in which the events leading to injury or death are indelibly stunning, and where the emotional injury is genuine and substantial and is based upon a relationship of significant duration that, at the time of injury, is deep, lasting and genuinely intimate.

*Id.* (quoting *Dunphy v. Gregor*, 617 A.2d 1248, 1254-55). Rather than

4

delineate strict categories of qualifying relationships, the court articulated a more flexible, fact-specific analysis:

> [Courts] must take into account the duration of the relationship, the degree of mutual dependence, the extent of common contributions to a life together, the extent and quality of shared experience, and, as expressed by the Appellate Division, "whether the plaintiff and the injured person were members of the same household, their emotional reliance on each other, the particulars of their day to day relationship, and the manner in which they related to each other in attending to life's mundane requirements."

*Dunphy*, 642 A.2d at 378.

Applying *Dunphy's* more flexible approach, whether Saulo's relationships with his nieces and nephews were "deep, lasting, and genuinely intimate" is an issue of fact that forecloses judgment on the pleadings. *See* Fed. R. Civ. P. 12(c). Viewed in a light most favorable to Plaintiffs, the record shows that Saulo played an important role in the lives of his nieces and nephews. Four of the children shared a household with the decedent at the time of his death. Pls.' Br. Opp. 11-12. The other two children spent much of their time there as well. *Id.* "Irrespective of the label placed upon a particular relationship, it is a jury question whether the inter-personal bonds upon which the cause of action is based actually exist." *Dunphy*, 642 A.2d at 378 (citations omitted).

### 2. Observation of Death or Grievous Injury

Bystander liability entails "sensory, contemporaneous perception of an injury" sustained by a family member. *Jablonowska v. Suther*, 948 A.2d 610, 620 (N.J. 2008). Plaintiffs Carmen Gonzalez (Saulo's mother) and Yunior Reyes (Saulo's brother) were not present at the time of the shooting or its immediate aftermath, so their individual NIED claims fail as a matter law. *See Portee v. Jaffee*, 417 A.2d 521, 526 (N.J. 1980); *Ortiz v. John D. Pittenger Builder, Inc.*, 889 A.2d 1135, 1140 (N.J. Sup. Ct. Law. Div. 2004).

In contrast, all other remaining Plaintiffs – Saulo's three children and six nieces and nephews – were in the immediate vicinity of the shooting, and at minimum heard the gun shots and saw Saulo being removed from the home

immediately thereafter. These Plaintiffs therefore satisfy the "contemporary observation" element of *Portee*. See *Mansour v. Leviton Mfg. Co., Inc.*, 890 A.2d 336, 338 (N.J. Sup. Ct. App. Div. 2006) (contemporaneous observation may be auditory); *Mercado v. Transport of New Jersey*, 422 A.2d 800, 802 ("The requirement of 'direct . . . sensory and contemporaneous observance . . . relates not to witnessing the moment of actual impact, but to witnessing the suffering of the victim.").

### B. Plaintiffs' Derivative and Survival Claims

Plaintiffs' response papers concede that only Saulo's children, as exclusive beneficiaries of his estate, have standing to bring derivative and survival actions. Pls.' Br. Opp. 4. Accordingly, the Court grants Defendants' motion for judgment as to claims of wrongful death, survivorship and violation of 42 U.S.C. § 1983 for all Plaintiffs except Saulo's children, Javier, Leidy and Honey Del Rosario.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion for judgment on the pleadings is **GRANTED in part** and **DENIED in part**. Except as to the decedent's three children, Javier, Ledy and Honey Del Rosario, derivative claims for wrongful death, survivorship, and for violations of 42 U.S.C. § 1983 are dismissed. With respect to individual claims for negligent infliction of emotion distress, the motion is **GRANTED** as to Plaintiffs Carmen Gonzalez and Yunior Reyes and **DENIED** as to the decedent's six nieces and nephews.

/s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: November 3, 2016**